IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DANIEL RAY BROWN                                                                    PLAINTIFF

v.                      Civil No.   3:21-cv-03032
                                    3:21-cv-03033

SHERIFF TIM ROBERSON, Boone County,
Arkansas; JAIL ADMINISTRATOR JASON
DAY; CORPORAL NICHOLS; SERGEANT
WADE WILLIS; and NURSE JODI WOODS                    DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

These are two consolidated civil rights actions filed by Daniel Ray Brown ("Brown") pursuant to 42 U.S.C. § 1983. Brown proceeds *pro se* and *in forma pauperis* ("IFP"). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court on the Motion to Dismiss (ECF No. 34) filed by Nurse Jodi Woods. Brown has responded (ECF No. 43) to the Motion.

**I. BACKGROUND**

Brown initially filed two separate civil rights actions stemming from his incarceration in the Boone County Detention Center ("BCDC"). The first lawsuit was filed on May 7, 2021, *Brown v. Roberson, et al.*, Civil No. 3:21-cv-03032. Brown named as Defendants: Sheriff Tim Roberson; Jail Administrator Jason Day; Corporal Nichols; and Sergeant Wade Willis.[1] Brown attached to the original complaint a grievance in which he complained: Nurse Woods "continues

---

[1] This Defendant was originally erroneously identified as Sergeant Willis Wade.

1

to deny me medical"; she was denying him "OGC [Ozark Guidance Center] meds"; he was a mental patient with a mental disease and Nurse Woods was "still blocking [his] medication; the denial of medication caused him to become suicidal; and he needed to go to the hospital as a result of "bad head trauma." (Civil No. 3:21-cv-03032; ECF No. 1 at 2-3). Brown says he has been diagnosed with schizophrenia. *Id.* at 9. He says he injured his head by banging it against the cement wall after having become very scared and paranoid. *Id.* He alleges he was "never treated for head injuries, burned eyes, vomiting, passing out, [or] blurred vision." *Id.* at 10. Brown asserts that "[n]o one has ever cared to take me to the hospital or even to look at me." *Id.*

Brown also filed his second lawsuit on May 7, 2021, *Brown v. Roberson, et al.*, Civil No. 3:21-cv-03033. He named as Defendants: Sheriff Roberson; Sergeant Willis; and Nurse Woods.[2] With respect to Nurse Woods, Brown alleges he first submitted a medical request for mental health treatment on March 1, 2021. (Civil No. 3:21-cv-03033; ECF No. 1 at 5). He says Nurse Woods has interfered with OGC and "has also blocked medications." *Id.* Next, he asserts Sergeant Willis and Nurse Woods violated his right to medical confidentiality when he was placed on speaker phone with OGC on March 1, 2021. *Id.* at 6. He says he was made to speak in front of everyone if he wanted help with his "mental problems." *Id.* Later, Brown indicates the medication he is being denied is for treatment of schizophrenia. *Id.* at 7. Finally, in a supplement to the complaint filed on May 17, 2021, Brown alleges Nurse Woods threatened to have him placed in a "suicide suit" if he complained at "sick call anymore." (Civil No. 3:21-cv-03033; ECF No. 6 at 2).

On June 2, 2021, an Order (Civil No. 3:21-cv-03032; ECF No. 13) was entered granting,

---

[2] Nurse Woods was originally identified only as Nurse Jodi.

among other things, Brown's request to consolidate the two cases as they involved common questions of law and fact.³ Civil number 3:21-cv-03032 was designated as the lead case and all future pleadings were to contain both case numbers. *Id.* at 3. Brown had also requested leave to amend his complaint. His request was granted. *Id.* He was instructed to file "a single complaint in the consolidated cases naming as Defendants the individuals he contends have violated his federal constitutional rights." *Id.* at 3. Brown was given specific instructions on what an amended complaint should contain and also advised that it superseded or took the place of the original complaint. *Id.* at 3-4.

On June 25, 2021, Brown filed his Amended Complaint in the consolidated actions. (ECF No. 19). Nurse Woods contends the sole allegations against her in the Amended Complaint are that on or about March 1, 2021, she and Sergeant Willis violated Brown's medical privacy rights when he was placed on a speaker phone with an OGC counselor and "had to speak of [his] mental problems in front of all who were present." *Id.* at 7. Nurse Woods concedes the Amended Complaint contains allegations that: Brown has schizophrenia; he submitted a sick call request for mental health services; he was placed in a padded suicide suit in response to a sick call request; he has been denied his medication for treatment of schizophrenia; he became suicidal; at one point he was homicidal; he was scared and paranoid and began banging his head against the cement walls; he suffered from delusions and hallucinations; he was not treated for head injuries, burned eyes, vomiting, passing out, or blurred vision; and despite requests he was never taken to the hospital or even looked at. (ECF No. 35 at 2-4).

---

³ Brown was found to have sufficiently alleged he was under imminent danger of serious physical injury for purposes of the exception to the three strikes rule. 28 U.S.C. § 1915(g).

## II. APPLICABLE STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

## III. DISCUSSION

Nurse Woods maintains the only allegations concerning actions taken by her are connected to the alleged violation of Brown's medical privacy. (ECF No. 35 at 6). Nurse Woods asserts that none of the other allegations regarding being denied medical care are specific as to her. *Id*. In her view, the medical privacy claim fails, and she is therefore entitled to be dismissed from this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id*. at 6-9.

### A. Medical Privacy

#### 1. HIPPA

Nurse Woods argues that no cause of action for violation of the Health Insurance Portability and Accountability Act ("HIPPA") exists. The Court agrees. HIPPA does not expressly or impliedly create a private cause of action. *Dodd v. Jones*, 623 F.3d 563, 569 (8th

4

Cir. 2010) ("HIPPA does not create a private right of action"). Thus, to the extent Brown is asserting violations of HIPPA as a cause of action, the claim cannot proceed as a matter of law.

### 2. Constitutional Right of Privacy

The Supreme Court has recognized a constitutionally protected zone of privacy that extends to medical records and medical communications. *Whalen v. Roe*, 429 U.S. 589, 598-99 (1977) (zone of privacy which includes an interest in avoiding disclosure of personal matters); *Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001) (expectation of privacy in not having medical information shared with non-medical personnel without consent). The Eighth Circuit has said that "to violate the constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation . . ., or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." *Van Zee v. Hansen*, 630 F.3d 1126, 1128 (8th Cir. 2011) (quotation marks and citation omitted).

In the context of incarcerated persons, it has been held that although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner,* 515 U.S. 472, 485 (1995). A constitutional right to medical privacy has been held to exist within the prisons. *See e.g., Doe v. Delie,* 257 F.3d 309, 317 (3d Cir. 2001) (prisoner's HIV-positive status). The release of medical information to nonmedical personnel does not violate this right if related to legitimate penological concerns. *See e.g., Seaton v. Mayberg*, 610 F.3d 530, 535 (9th Cir. 2010) ("prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them"); *Beers v. Stockton*, 242 F.3d 373 (8th Cir. 2000)

(unpublished table decision) (same); *Tokar v. Armontrout*, 97 F.3d 1078, 1084 (8th Cir. 1996) ("no clearly established constitutional right to nondisclosure of HIV status").

Here, Brown alleges:

> I was then taken to the booking area where Boone County Nurse Jodi was. Either she or/and Sgt. [Willis] violated my medical rights to privacy when I was placed on a speaker phone with Ozark Guidance Center Counselor and had to speak of my mental problems in front of all who were present.

(ECF No. 19 at 7).

Even though a prisoner's right to medical privacy is restricted, the Court cannot say that no plausible claim has been stated. The Court can think of few areas where one's privacy should be subject to more protection than statements made by a person about his psychological problems in an effort to obtain appropriate treatment. Moreover, at this stage, there is nothing to suggest the existence of any legitimate penological interest in having a speaker phone utilized in an open area of the facility with non-medical personnel present. *Cf., Peikkola v. Jackley*, 4:15-cv-04148, 2016 WL 917914, *7 (D.S.D. March 8, 2016) ("these allegations belie any argument that access and disclosure of [plaintiff's] records were related to a legitimate penological interest").

### B. Denial of Medical Care

Finally, Nurse Woods contends the Amended Complaint fails to state a proper denial of medical care claim against her. The Eighth Amendment's prohibition against cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty*, 684 F.3d 808, 817 (8th Cir. 2012). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)

6

(quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Brown must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor' s attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (quotations marks and citations omitted).

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (quotation marks and citations omitted). This is an "onerous standard," *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013), requiring a prisoner to "clear a substantial evidentiary threshold." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010). To establish the subjective prong, a plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).

The Court agrees that while Brown alleges that he suffers, or has suffered, from a variety of medical conditions, including some he maintains would be obvious to a lay person, his Amended Complaint does little to describe actions taken directly by Nurse Woods. However, the Court must liberally construe the complaint and draw reasonable inferences that the defendant is liable for the misconduct alleged. Further, a line of cases establishes the appropriateness of considering both the original and amended complaints as a combined pleading when it appears plaintiff meant one to supplement another. *See e.g., Cooper v. Schriro*, 189 F.3d 781, 783 (8th Cir. 1999).

7

Construing the complaints together, Brown has alleged that Nurse Woods interfered with his mental health treatment, denied him medications, and refused his requests for medical treatment. The Court believes Brown has asserted a denial of medical care claim against Nurse Woods sufficient to withstand this Rule 12(b)(6) Motion.

## IV. CONCLUSION

For these reasons, it is recommended that the Motion to Dismiss (ECF No 34) be **GRANTED IN PART AND DENIED IN PART.** Specifically, it is recommended that the Motion be **granted** with respect to the HIPPA claim. In all other respects, it is recommended that the Motion be **denied**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of August 2021.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE